Mr. Waxman. Thank you, Mr. Chief Justice, and may it please the Court. Patent law places the burden of proving infringement on the patentee. And until this case, it was settled that the burden does not shift if the issue arises in a declaratory action seeking a judgment of non-infringement.  The Federal Circuit imposed a different rule in suits brought under MedImmune, where the party seeking a declaration of non-infringement is a licensee. That was error. Allocation of the burden of proof adheres in the governing substantive law, while the Declaratory Judgment Act is procedural only and does not change substantive rights. The burden of proof in MedImmune actions, like all other declaratory actions, remains where it would have rested in the equivalent coercive suit brought by that patentee. Now, this concerns just the risk of non-persuasion. It doesn't concern the burden of production. Is that right? That's correct. That's the issue in this case, although, as we point out, the word burden of proof I think the word burden of proof used in the opinion below could be thought to be addressed to both points. But the parties agree that the relevant consideration here is the burden of proof and that trial judges do retain discretion to make rules about ordering the ordering of proof. If that's all that's involved, then the case doesn't seem to amount to quite as much as one might have thought otherwise, does it? If suppose the patentee has the burden of production, so they would have to explain why there was infringement. They would have to introduce proof of infringement. And the only difference is who wins when the fact finder thinks that it's exactly an equipoise. Right. Well, that, of course, was not what happened in the — not what the Respondent maintained should happen in this case. But taking your question as it is, this Court has pointed out repeatedly that the burden of — where the burden of persuasion rests is very often outcome determinative. And that is certainly true in patent cases. What the jury is told about who has the burden of persuasion is surpassingly important in many cases, including many patent cases. And that's the issue in this case. I mean, the substantive — the reason why the Federal Circuit erred is clearly doctrinal, which is this Court has said over and over again that burdens of proof, like standards of proof, are substantive. They adhere in the substantive right. And the Court has also said repeatedly that the declaratory judgment action is procedural only and doesn't change substantive rights. But I think if you go to a — to the policy question, Justice Alito, reversing the burden in a declaratory action would impair the purpose and utility of the Declaratory Judgment Act, which was enacted to provide a mechanism for determining how the equivalent coercive action would be resolved without the — without requiring the declaratory judgment plaintiff to subject itself to retrospective liability. And indeed, shifting the burden would threaten the issue-preclusive effect of the declaratory  Frustrating. Roberts. It seems to me we can — all that may be true, but we need to cut down to the basic issue, which is metamune changes all that. The idea is you're moving along with the license, everybody's happy. All of a sudden you jump into court. Why shouldn't you have the burden as the party who seeks to disturb the status quo? Well, the reason, Mr. Chief Justice, is the reason that the burden of proof is substantive and a declaratory judgment action under the Act is not — is aimed not to change any substantive rights. And that's why all of the decided cases in this area, except for the one below, left the burden exactly where substantive patent law left it. Does it help your answer or does it limit the theory of your case too much to say that in this case there is a controversy satisfying declaratory judgment rules because the patent holder gave notice of potential — of infringement? Am I right about that? You're right about that. And that would be true, Justice Kennedy, in all metamune cases. Now, should we make the case turn on that, or can we say with declaratory judgment there has to be a dispute, we know that a dispute is likely a controversy, so the formality of a notice is not important? Well, I don't know that it's a formality of a notice. I mean, the issue that this Court addressed in metamune, the question that you're raising, I think, is one that goes to Article III jurisdiction. You can't use the declaratory judgment procedure to get the Court to answer a hypothetical question. Well, it goes to me to a basic question of fairness. When I picked up this case, I thought, how is the patent holder supposed to know what all these new inventions are? What does it know about it? But then I answered my own question by saying, well, it gave notice of infringement. But that's why I've asked if the notice is essential to your position. I think the notice is the — well, it's essential to the Article III metamune question whether or not there actually is a case or controversy. So in this case, it's perfectly obvious because the license requires Medtronic to affirmatively go to Murawski within 30 days of introducing any product and not only providing notice of the product, but providing the manual, the diagrams and the manuals that are given to physicians so that Murawski can determine within 60 days whether or not to assert infringement. In Metamune, you didn't have that procedure, but the Court still held in the context of that case that because Genentech had made clear that it thought that the Kabili patent covered the accused devices, there was sufficient — sufficiently concrete controversy that Metamune did not have to stop paying royalties and breach the license. And so, therefore, I think I may be talking around your question, but I am trying to get to the point that the requirement of some notice, the patentee — there's no declaratory judgment jurisdiction if the patentee doesn't know about the product, has never done anything to suggest that the product — that his or her patent reads on the product. But that is an Article III question that would be — you wouldn't get to the burden of proof if you couldn't satisfy Metamune. Ginsburg. Mr. Waxman, what do you make of the Patent Act listing non-infringement as an affirmative defense in an infringement suit? We agree with the articulation of the point by the Solicitor General in the United States brief, which is that cases have recognized that non-infringement can either be a general defense. That is, when non-infringement is simply a general denial of a cause of a claim of infringement, it is not an affirmative defense. But there are particular types of non-infringement claims, and the ones that I'm familiar with are prosecution history estoppel and the experimental use exception, that are affirmative defenses. In other words, those are situations in which the alleged infringer says, hey, I'm not saying that your patent doesn't read — all the claims of your patent don't read on my invention. I'm claiming non-infringement because I was making experimental use, and that has affirmatively been determined by Congress not to infringe. Or, yes, your — the elements of your claim read upon my invention, but during the prosecution of the patent in the patent office, you disclaimed some claim scope. And under prosecution history estoppel, this Court elucidated in festo, there is no infringement. This is a case involving a general denial of infringement, and therefore, it is not an affirmative defense. Ginsburg. What you just responded, that would go as well for an alleged infringer who is not a licensee, right? Waxman. Waxman. Yes. I mean, absolutely. I mean, the point here — This case is about the difference between the licensee and the non-licensee. Right. So a defense of non-infringement, a general defense of non-infringement is not an affirmative defense. And in the potential or correlative coercive action, which would have been a suit for patent infringement by Murawski had we ceased making the royalty payments, they would have borne the burden of proving infringement unless we raised an affirmative defense like prosecution history estoppel or experimental use, in which case we would have the burden. The point of the Declaratory Judgment Act is that the burden is left exactly where it would have been had there been no — had this identical issue arisen in the absence of the declaratory judgment procedure. And in this respect, it is identical to the jury trial right, which this Court held in Beacon Theaters v. Westover, is also an element of the substantive claim and also cannot be deprived by the peculiarity of a declaratory judgment being a claim for an equitable remedy.        Kagan. Yeah. Yes. Yes. Kagan. Yes. Yeah. Mr. Waxman, as I understand it, the agreement in this case identified certain patents and contemplated that there would be disputes about whether particular products of Medtronic violated or infringed or practiced whatever those patents. But there might be some other kinds of agreements which instead identify certain patents and contemplated that there might be some other kinds of claims that if Medtronic had that agreement, it identified certain products, but Medtronic woke up one day and said, you know what, we don't think that those products infringe. We essentially want to relitigate our agreement. Can Medtronic come to court and do that via a declaratory judgment action? And if so, who would bear the burden of proof? So if I understand your question, first to go to the license in this case, this case not only involves products that didn't — that aren't specifically articulated in the license agreement, neither the patents nor the products at issue in this case had even been conceived, much less in existence, at the time the license agreement was in effect. But in — if I understand your question, in a situation in which I make a widget A and you claim that you have the patent that reads on that widget, and I — you agree to license me to do it, if the license — if payment of the license depends upon a determination that it otherwise would be infringing, I can file a declaratory judgment action and seek a declaration that it's not infringing. That is, if the cover — if the license covers only products that otherwise would infringe, I can bring a deck action claiming non-infringement and you would bear the burden, assuming that you had threatened in some way to enforce your patent against me. In — in the situation that — the sort of boogeyman situation that Murawski and the intellectual property owners brief articulate, which — imagine, which is, you license — I have a patent — I have a product, you have a patent, you license it to me, and I turn around the next day and sue for non — a declaration of non-infringement. There are any number of ways that you, as the patentee, could protect yourself from that extraordinary eventuality. You could provide, for example, that you — you would require me to issue a — you know, to — to pay a paid-up royalty for all use. Or you could simply say, we don't care whether the patent infringes or not. You agree to pay me $3 per unit sold. Or you could put a provision in that would say, if you sue for patent infringement, the royalty rate goes to 3x. Or, for that matter, if you sue, that will — that can — I can deem that a breach of the license agreement and — and recover patent — the remedies that patent law allows, an injunction in treble damages and attorney's fees in the context of a — a willful action. I want to underscore, although the Federal Circuit made a broad rule, exactly what we have here. In this case, Murawski — this license is from 1991. Murawski — it's — it's not in the record, but there's no dispute that Murawski has received hundreds of millions of dollars of royalties from Medtronic for its patents. It gets, as a benefit of this license — notice, as I said, within 30 days of every new product and the manual, and it can require Medtronic to start accruing royalties and an interest rate of two — of two points over prime as soon as it sends us a notice. And, moreover, in the — in the litigation tolling agreement, we agreed that even though we are not a party in the reference St. Jude action, we would be bound by any determination in that adjudication, whereas otherwise we wouldn't. So this license agreement was enormously beneficial and couldn't be farther from the scenario of I have a widget, I agree to license it, and the next day I turn around and sue you. But in that event, there would be lots and lots of remedies. I do want to underscore one other thing. The — the Federal Circuit said that it was applying this special rule only in metamune-type cases. But the rationale of the Court is that what causes the burden to shift is the absence of a counterclaim for infringement. That would have, for example, caused the burden to shift in the Myriad case that this Court decided last term, where there was one researcher at NYU who had standing to bring a declaratory judgment action. There was no basis for Myriad to claim infringement because he had made clear that he wouldn't — he wouldn't engage in the research and clinical work that he was going to, so long as he was in risk of patent infringement remedies. And that — the source of the rule, the source of the law, where the burden of proof lies, is in substantive patent law. And this Court has said for 125 years that it rests with the infringer. What neither the Federal Circuit nor my friend on the other side of this case has ever identified is what is the source of the rule that shifts the burden in a declaratory judgment action. It can't be the declaratory judgment act because that act is procedural only. If I can reserve the balance of my time. Thank you, counsel. Mr. Gannon. Mr. Chief Justice, and may it please the Court, the government agrees that using the same burden of proof that would apply in the hypothetical coercive action that underlies the declaratory judgment act is the best thing to do in this mirror image declaratory judgment action. That best serves the purposes of the declaratory judgment act and allows for final resolution of the types of controversies that this Court contemplated in Medimun. If I could turn to Justice Kagan's point about an incident in which the parties had actually agreed to whether certain products were covered by a particular license. That would be different from the situation we have here because the products in question here weren't actually in existence at the time of the underlying license agreement. The whole point of that aspect of the license agreement was to, as you said, channel future disputes into this particular dispute resolution mechanism. Are you suggesting that the burden-shifting rule should be different in the hypothetical Justice Kagan example? I was not about to suggest that, Justice Sotomayor. I was going to say that I think that the — that that would probably be the least logical way to deal with the quandary that might arise from thinking that somebody is then trying to breach the license. We don't think there's any license breach here because there wasn't any prior agreement on the fact that these future products were going to be covered by the — by these patents, that they'd be practicing these patents. But even if there were some concern about the licensee turning around and challenging the agreement that it had previously made, it seems like the problem there is either that they should be estopped by what they already said in the agreement or LEAR needs to be extended to keep them from being estopped in that way. But shifting the burden of proof seems like an odd way to get at solving whatever the quandary there might be. And I think that at some point this — this also interweaves with a point that the Chief Justice made about whether Medtronic here is seeking to change the status quo. And we don't think that Medtronic is seeking to change the status quo here for a couple different reasons. One of them is, as I was just saying, that the agreement here didn't actually reach — the license agreement here didn't have — didn't include a meeting of the minds about whether these particular future products would be covered by these patents, including one of the patents was reissued after the time of the license. And also, this license agreement expressly preserved the party's ability, including Medtronic's ability, to challenge both the validity and the enforceability of the patents. That's at page 13 of the Joint Appendix. And so there's no way in which I think it can be legitimately said that Medtronic is trying to either get out of its contractual obligations or to change the status quo. The status quo right now is that the royalties are collecting in a certified account. And so, in a sense, both parties are trying to change the status quo in trying to get the stream of royalties that either is applicable to these products or isn't on the basis of the resolution of a question that the parties had not decided but said would be decided in a declaratory judgment action like this. And we think that the best way to think of a declaratory judgment action like this is that it is the mirror image of the underlying coercive hypothetical action that could have been brought against Medtronic. Roberts. Well, but I guess the argument is that it's the mirror image of an action that could not have been brought because Medtronic is paying royalties. Well, the same thing is true in MedImmune. And I think that the Court noted that the — in MedImmune, that the Declaratory Judgment Act was intended to help get the party out of the dilemma it would be in in deciding whether it should continue to be effectively coerced into paying royalties that it thinks it doesn't need to pay or exposing itself to the risks associated with — with breaching the license and — and being subject to treble damages, attorney's fees and the other remedies that would be available under the Patent Act. And yet, even though there had been no infringement in that case and no breach of the contract in that case, which is also true here because so far everybody has been behaving the way the license expected them to behave, the Court recognized that the parties had a concrete dispute about the applicability of the patents to those particular products, that the scope of the contract was not going to require payment of royalties where the patent did not apply, and said that the — that the issues that were going to be resolved in the Declaratory Judgment Action there were going to involve questions of patent validity, patent enforceability, and scope of coverage, patent infringement, which is exactly what we have here. Medtronic has raised in their complaints the well-pleaded complaint that you would look to here is one that arises under the Patent Act and includes claims involving all three of those issues, just as was the case in MedImmune. I take it you disagree with the — we have one friend of the Court briefed that says this is not a case arising under the patent law, it arises under contract law, it's a contract case with a patent issue. Yes, Justice Ginsburg, we do disagree with that. We think that this case involves a claim that arises under the patent laws for the reasons that I was just saying. I think that the way to — the way to conceptualize this is to look to what the well-pleaded complaint would be in the hypothetical coercive action that would be being brought against Medtronic if we didn't have the problem presented by the fact that they haven't actually breached the contract or infringed at this point. And we have every reason to think that that hypothetical coercive action is one that arises under the patent laws because it's one involving infringement. That's the dispute that the parties acknowledge that they have in the litigation tolling agreement. At page 20 of the joint appendix, it talks about the fact that the parties have a dispute under section 271 of the Patent Act. In the red brief here, Mirowski has told us on page 48 that if Medtronic were to cease paying royalties, that the recourse would be that they would bring an infringement suit. And the complaint here in paragraph 5 alleges that the claim here arises under the Patent Act. And because it does arise under the Patent Act and because it's clear here that all of the defensive issues would also be Federal, as I mentioned before, I think there is no dispute here that this would arise under the patent laws, which would provide for district court jurisdiction under section 1338 and exclusive appellate jurisdiction in the Federal Circuit under section 1295A, even before the amendments in the America Invents Act in 2011. I think that there is one other point that would be worth making in response to some of the amicus briefs about the potential problems here associated with whether the parties have an incentive to enter into these type of licensing arrangements. As Mr. Waxman already explained, the patent holder here got lots of benefits out of entering into an agreement like this, notwithstanding the fact that they would leave themselves open to precisely the suits that the agreement contemplated, which was a suit involving both infringement and validity questions, and that under the circumstances there's — they had plenty of incentive to enter into a license agreement, notwithstanding the fact that they would continue to bear the same burden of proof that they would bear in every other procedural context in which patent infringement claims have arisen up until now. And so I think that in that sense, that's — that's not a sea change from their perspective. And yet, even if they were to think it so, as Mr. Waxman explained, a licensor in that context would have several mechanisms that they could use in order to rejigger the balance between the parties if they wanted to. And I think that we agree with everything on the list that Mr. Waxman mentioned, including having fully paid-up licenses or allowing a suit for infringement or invalidity to constitute a termination of a license that would allow the patent holder to bring an infringement action. If there are no further questions, we'd urge the Court to reverse. Roberts. Thank you, counsel. Mr. Neustadt. Thank you, Your Honor. Mr. Chief Justice, and may it please the Court. The Federal Circuit got it right in this case. The Federal Circuit took the well-settled law on burden of proof and it applied it to two stipulated facts and reached a conclusion that it had to reach. It was controlled by it. The two stipulated facts were, number one, when Morawski's counsel, me, wrote letters to Medtronic, that was not a notice of infringement. There could be no infringement in this case. Infringement is defined as using the patented invention without authority. Medtronic had authority. It was licensed. The second stipulated fact, and this is at page 51 of the joint appendix, is that Medtronic is a licensee. It cannot be an infringer. So everything that you say about infringement involves a completely different situation. There was no shifting of the burden of proof. The well-settled law that I referred to is the normal default rule. The normal default rule is perhaps one of the most fundamental tenets of our jurisprudence. It says that if a party files a complaint and seeks relief, it has a responsibility to prove that it is entitled to that relief. And the normal default rule has the word default in there because it refers to the fact that the statute doesn't decide the burden of proof. And there's no dispute in this case that the statute does not decide the burden of proof. So you could say that about any declaratory judgment action. You can say the person bringing the declaratory judgment action is seeking the relief. And if we follow what you said, that then the burden shifts in every declaratory judgment action. And it clearly doesn't. I mean, we've said time and again that the burden of proof normally does not shift. What's different here? I'll tell you what's different here. The difference is that there is no infringement. Medtronic is a licensee. As a result, there can be no coercive counterclaim. As the Chief Justice noted, they're paying royalties. There is no infringement. How about a permissive counterclaim? Pardon me? How about a permissive counterclaim? A permissive counterclaim by definition would have nothing to do with the issue that is involved. But could the patent holder bring in the declaratory action a counterclaim for infringement? No. They cannot, because Medtronic is a licensee, they cannot be an infringer. And the difference is that they can be an infringer, Mr. Neustadt. Pardon me? And they can be an infringer if they say, we're ignoring our agreement, we're not paying royalties, but we're going to go on and continue making the product. Then MVF would say they would be infringing. And that's the world that MedImmune imagines is happening. It says — No. I'm sorry. I interrupted you. Go ahead. No, I'm finished. I'm sorry. I didn't mean to interrupt you. Okay. That's not what happened in MedImmune. First, if you change the facts and Medtronic starts infringing because it stops paying royalties, of course you get different results. Here's what happened in MedImmune in our situation. I'm not sure how you're receiving royalties. It's in an escrow account. Medtronic is holding the money. Yeah, but it's in an escrow account. You can't touch it, right? Well, we do not have access to the money that they're holding, correct? Right. So how are you getting paid? Why isn't there a technical infringement? Well, there can't be. Because you're not receiving the money. Because we agreed to that in the agreement. That's part of our agreement. Yeah, but you're still not receiving the money. But we don't — we agreed to not receiving the money. Everyone is operating in accordance with the license. We can't say you're withholding the money and not paying it to us. You agreed they could sue you. Pardon me? You agreed they could sue you under a declaratory judgment act to find out whether or not they're infringing, correct? That's right. No, no, no. Not infringing. Why shouldn't you be bound by that? I'm sorry? Why shouldn't you be bound by that agreement? Oh, we are bound by the agreement. To prove that they're infringing. No, they're not infringing. It's claim coverage. Medtronic cannot infringe because they're a licensee. The dispute is over claim coverage. It's not infringement. That's why we cannot have a counterclaim for infringement. Justice Scalia's question, the big difference is that we cannot counterclaim for infringement. Under the normal default rule where the party seeking relief has the burden of proof, you have to look at the case and you have to ask yourself is — I don't understand. Suppose the licensee says this isn't covered by the agreement at all. We're not going to pay you anything. And it starts to manufacture its products. That's the whole point. It's outside the agreement. They're not going to pay you anything. Or am I missing something? Yes. I believe you are. What Medtronic wants in this license is they want an insurance policy for their future products. The problem is that they could, if they don't have a license, they can get enjoined. So they build this insurance policy so that they're protected, and then they even have a provision whereby they can go and file a D.J. action. Now, as I was saying, there are two types of D.J. actions in this circumstance. One is where the accused infringer says I am not infringing, I want a D.J. to that effect. In that response where you're talking about infringement, not claim coverage, the patentee has to counterclaim. It's compulsory. The patentee then has the burden of proof in that case because he has claimed infringement. But look, it seems to me it is often the case in declaratory judgment actions that the defendant in the action cannot counterclaim. I mean, it typically occurs when somebody doesn't want to be in breach of contract and brings a suit to see, you know, claiming if I do this I won't be in breach. The other side can't counterclaim because the person hasn't been in breach. The whole purpose of the declaratory judgment statute is to enable you to sue before the other side has a cause of action against you. That's the whole purpose of it. So why should the fact that the other side doesn't have a counterclaim change anything? That's usually the situation. Because under the normal default rule, if only one party is seeking relief, that party has the burden of proof. You get into a more complicated situation. We're not dealing with the normal default rule. We're dealing with the declaratory judgment statute. And we said time and time again that it doesn't alter the burden of proof. And your response is, well, it does when the other side can't counterclaim. And my response to that is, usually the other side can't counterclaim. If you take the normal default rule set forth in Schaffer, which is the case we cite and it's this Court's precedent involving an individual education program, and this Court specifically states, if the parents bring the suit, they have the burden of proof because they're seeking relief. And if the school district brings the suit, they have the burden of proof because they're the ones who are seeking relief. Wherever you have a case where only one party is seeking relief, the normal default rule is applicable and the party that seeks relief has to prove it. Ginsburg's case was not a patent infringement case. It wasn't a declaratory judgment, was it? It wasn't, but that doesn't make any difference because there's no exception for declaratory judgment cases in the normal default rule. Why shouldn't there be? I'm sorry? I mean, why shouldn't there be? I take what you're saying is that their claim is, look, you called it claim scope or something. What did you call it you called it? Claim coverage. Claim coverage, they say. We have a product and it doesn't violate the patent for the reason that the claims in the patent don't cover it. Correct. Now, you want to call that a claim coverage. I would call it no infringement. Call it what you wish. But the fact is there are, and moreover, you couldn't bring a counterclaim because he's already agreed that if he loses his suit, he'll pay you the money. So there's nothing to claim for. That's correct. Yes, I know. Now, all that's true. Yes. But nonetheless, the fact is in many claims, in many instances, though perhaps not yours, this kind of claim, i.e., that person's patent does not cover my product, is actually a way of saying whether your product infringes the patent. One way of saying that. So their point is call it what you wish. But where you have a claim which amounts to a claim that my product does not infringe his patent, the rule that should apply is the person who owns the patent should have to prove that the claims do cover the product. And there are a lot of good reasons, et cetera, that they put in their brief why that should be so. It's easiest for the patentee to know in what respect it violates the claim. Normally, a patent being a monopoly should not have too many advantages beyond the scope of the monopoly, and we don't like false patents, because that you'd have different results in the same kind of patent with different people depending upon whether in some other instance your client brought a suit or whether this was. I mean, you read the arguments. So, looking at those functional arguments, is there any answer that you have to their point other than cases in different subject matters where burdens of proof did shift? Well, the answer to your question is that the normal default rule is a fundamental tenet, that you can't go into court and say it's the responsibility of the defendant to disprove the allegations of my complaint. In cases where you have a counterclaim, of course, the patentee is going to have the burden of proof. In cases where there can be no counterclaim, you have only one party seeking relief and that party has the burden of proof. And it follows from the normal default rule, which is the rule of the court, rule of this Court, it's the established rule of the land, it's a fundamental tenet that a party cannot come into court. And the Declaratory Judgment Act doesn't change it. That's your position. What do you do about the res judicata problem? Let's assume that we put the burden of proof where you want it, okay? So this Declaratory Judgment Act is defeated, all right? Nonetheless, they say, still and all, we're going to go ahead and not pay any royalties. And then you bring, you bring an infringement action, right? Right. Is the prior decision res judicata or are you going to have to reaffirm that? You're not going to have to reaffirm that. You're not going to have to re-litigate the whole thing, but this time with the burden of proof on you. Yeah. You're not going to have to re-litigate the whole thing. Why not? You never litigate. You never establish that you're entitled to any infringement damages. I agree. But you're not going to have to re-litigate the whole thing. This issue is going to be decided on preponderance of the evidence. And we don't have the burden. They have the burden on that. Once that's decided and we have the burden on that, we're going to have to re-litigate the whole thing. No, no, you, you would normally have the burden as, as the person claiming infringement. Oh, of course. Of course. Of course. Right? So you'll have to re-litigate the whole thing. Because you, you never established that there was infringement. In the Declaratory Judgment Action, all you've established is that they didn't prove non-infringement. No, and that's all true, and I'm not arguing with it, but we have to re-litigate the whole thing. No. First of all, okay, I'll give you two answers. The first answer is you're never going to get this situation because the last thing in the world Medtronic wants to do is give up his license. So it's not going to, it's not going to stop paying royalties. Same thing in me. It's my hypothetical. Okay. Now, to follow your hypothetical, the Court who, say, tries the issue with respect to whether or not there's claim coverage, and let's say we prevail on that, when there's a subsequent infringement action, you're correct. We cannot say that they're stopped by res judicata or issue preclusion. But we can say, Your Honor, you've seen this entire case. Now, where it was preponderance of the evidence before, it's now preponderance of the evidence on the other side. It may be the difference between 49.9 and 50.5. And we're going to bring a motion for summary judgment, and you'll hear from me. Scalia, you're right, but it doesn't matter very much. That's your answer, right? And I've got one further answer to that, and that is there is no exception to 100 percent lack of finality with respect to the normal default rule. The normal default rule is more important than saying that if there is a little bit chance of a lack of finality, we're going to throw out the entire normal default rule in favor of this rule and put the burden on proof on the party who is not even seeking any relief. And there was no shifting in this case. Shifting involves starting with a position, shifting to another position. As soon as they file the suit and they're the only party seeking relief, they would have the burden of proof. Now, if they are infringing, we can counterclaim. Then we're going to have the burden of proof, because that's an issue where you have two parties seeking relief, and that's a little more complicated. Why isn't that true here, because you are seeking release of the escrowed funds? We're not seeking it in the suit. The way the agreement was between the parties was, if Medtronic disagrees with our assessment, then they can go ahead and file a D.J. action, and if they can prevail on that D.J. action, they won't have to pay. We seek nothing in the suit. We have no counterclaim. We're asking for nothing. As to Justice Kennedy's question before, as notice of infringement, there was no notice of infringement. What we told them was there was claim coverage, and there's a big difference between claim coverage and infringement. If we tell them that we're asserting infringement, we're going to have the burden of proof. We can assert infringement because they're the licensee. Kennedy, well, there would have been infringement if you had refused to pay the royalty. And if they had refused to pay the royalty and you were covered, then there would have been infringement. But then you're changing all the facts around. That's not what we're dealing with in this case. All right. I understand. And in MedImmune, there was not. Well, Mr. Newstead, I think I just disagree with that. You keep on saying it's a question of claim coverage, but the question of claim coverage, all that is, is part of an infringement analysis. And that's the analysis, as Justice Kennedy said, that's the analysis that would have been appropriate if Medtronic had stopped paying royalties and MVF had sued Medtronic as a result for patent infringement. And that's the world that we're supposed to imagine after MedImmune, is if, contra the actual agreement, the licensee stopped paying royalties, and we think about an infringement suit. No, that is, permit me to disagree with you. MedImmune was not involved with that. Here was the problem in MedImmune. The MedImmune did not want to continue to pay the royalties, but it needed the license. Eighty percent of its product line was dependent upon that license. So, as a matter of sheer rigidity, they could not not pay the royalty. They will lose their whole business. They wanted to get into federal court. At that time, the Federal Circuit had a GenProbe ruling which says if everyone's paying royalties, there's no dispute. In MedImmune, this court reversed. You said there's enough of a controversy for MedImmune to have this, to go in with the DJ action. In that suit, it would be exactly like this suit. The patentee could not counterclaim because there is no infringement. MedImmune's still paying its royalties. So, in the MedImmune case, but they never got to it because that MedImmune case was settled, you'd have the exact same situation we have here, which is that there is no counterclaim and, therefore, MedImmune, who is seeking relief, has the burden to show it's entitled to relief. Breyer. What do you do with the government's argument here, which I take it as being on page 17 they make an argument, which, as I understood it, which is a big qualification, the the the some of these things are awfully complicated. You might have a claim, or really it's a set of claims that cover 48 pages with all kinds of symbols and 42 different sort of division possibilities. And then the so-called infringer, or the person who falls outside the coverage, is looking at his product, and it's one of the most complex things you've ever seen. And he has to think to himself, well, how, how am I supposed to, how does the claim cover this? And, and it's, there are many, many, many possibilities. I take it that's what they mean when they say it makes sense to put the burden of demonstrating how the claim limitations map onto the accused product, because infringement may be found only when the product falls within the scope of the asserted claim or claims in every respect. Your client, who is the patentee, knows how. Otherwise, he wouldn't be bringing this infringement suit or the inside the coverage suit or responding to someone who says it's outside the coverage. But, but the person who is the alleged infringer might not know it. And therefore, it makes sense to put everything in the same place, notice of infringement, burden of production, burden of proof, and that way it will be easier to focus on what's at stake. That's what I take it their argument is. If I've not got it right, you certainly should. I think it's pretty close. It's absolutely not true. First of all, well, the first answer, and I'll get to the second answer, is if you have that and say, well, it's more convenient for us to do it, you're creating a patent law exception to the normal default law. And that's something you keep telling the Federal Circuit not to do. Like in eBay, don't create a separate patent rule for injunctions. So it's not a patent law exception. It's the recognition that a procedural device that simply changes the nominal status of the parties doesn't change the substantive rules, and that the burden of proof counts as a substantive issue. But you only have that substantive rule where the patentee counterclaims. When the patentee counterclaims, you have two parties seeking relief. Naturally, the patentee has the burden of proof. If there is no counterclaim, there can be no infringement. You're just talking about claim coverage. But as to the second part of your question, Justice Breyer, what happens is the patentee, when they give notice of claim coverage, they can tell them. There's no mystery as to that. But do they have to tell them? Well, they always do. There's no mystery as to that. They always do? Well, sure. I mean, if you go into the suit, the first question is interrogatory. Why do you think this is covered? So there's no mystery as to that. And it's much easier to prove non-infringement than to prove infringement, because these are governed by the all-elements rule. The all-elements rule means that if the patentee wants to prove infringement of a claim that has ten elements, he's got to prove ten elements, or in your example, many more. For the person who is the licensee, you want to prove non-infringement, he has to only pick one of those elements and say, I don't have it. So that's a good point. So what you're saying is that the page 19 or whatever I quoted is a made-up thing which doesn't ever, never really exist in your experience. Oh, that's quite right. The first question would be, will you tell me how this infringes? And that argument wasn't even presented to the Federal Circuit before its decision. And the Federal Circuit would have openly rejected it and say, you've got to be kidding. So you're saying I don't really care about what is an action where there is an infringement action or there even could be one in the circumstances before us. That's not my case, because they're going to pay me forever if they lose this declaratory judgment, so there's no shift. And where there's no shift, you ought to follow the rules for where there's no shift, which is that the burden lies on the person bringing the suit. That's your argument. That's exactly right. Yes. The analysis that the Federal Circuit did is, I've got a burden of proof issue, let me find the controlling law. The controlling law is the normal default rule. I've got only one party here seeking relief, and that's the licensee, so why shouldn't he prove this? Your argument is that the horribles don't exist because the one on page 19 never has come up, and as far as the no race judicata, I don't care, because I'll come to the same result with a different means. Yeah. And then the Federal Circuit, it's hard to say. Is there any other practical point that they brought up that you want to respond to? Oh, sure. Hundreds of claims, that's ridiculous. You know, the courts say, hey, you know, I have other cases on my docket, get down to five claims. Anticipate any argument. The person suing, the DJ licensee, he doesn't have to anticipate any argument. He said, you told me it was these claims, and we even had an agreement with them, we couldn't go over 30. And all I've got to do is say, in claim 1, we don't have element number 6. Claim 2, we don't have element number 4. It's a very simple matter. There's no problem whatsoever there. So what the Federal Circuit did is, I've got a burden of proof issue, let me find the controlling law. I'll look to the Supreme Court. The Supreme Court says there's a normal default rule, and it's the party seeking relief. Yeah, but you're overlooking the elephant in the room, which is the relief they are seeking is protection against the relief that you would be seeking, but for the Declaratory Judgment Act. We can never seek it because they are not infringing. And we do not have to file a counterclaim for claim coverage because there's no requirement that we do so. There's no coercive complaint. If they are suing, if there was a non-infringement situation, we'd have to file the coercive complaint. Scalia. Scalia. The Declaratory Judgment Act is addressed to potential coercion, not actual coercion. That's the whole point. You should be able to bring the suit before coercion is applied. Now, it is true that you are not applying coercion right now, but what they are worried about is if they stop paying the royalties, you will apply coercion. And the Declaratory Judgment Act is a way of getting this on the table before a court without their having to go into default and incurring all the penalties. But it is not intended to shift the burden of proof. Well, it doesn't shift the burden of proof. It does shift the burden of proof, because if what they are worried about is your claiming infringement and exacting a penalty from them for their not paying the royalties that the agreement provides, okay, that's what they are worried about. The Declaratory Judgment Act enables them to sue beforehand, before they incur liability. That's its whole purpose, and its purpose is not to shift the burden of proof. The — in answer to your hypothetical, I agree with you on all of that. But as in MedImmune's case, MedImmune ends up with the burden of proof. MedImmune says, I've got to get a resolution to this question, I want you to overrule GenProbe, I want to show why the product — why my product is not covered. Well, all of that's fine, there's nothing the matter with that, there's no coercion. It's just that when MedImmune does this, it's going to have the burden to show it. Breyer. You would agree with this, you would agree that if that agreement of yours read a little differently, if MedImmune, if they had said, you know, we're not going to pay royalties until your client brings an infringement suit, which you intend to do, at that point, if you had made that promise, you would have the burden of proof, because you bring infringement suit. Well, of course. And if they said either an infringement suit or a declaratory judgment action, then, again, you would have the burden of proof even in the declaratory judgment action, because then they'd be totally parallel. I mean, then you'd have, if you brought the infringement suit, it's yours, and then in the declaratory judgment action, it should be true, too, in your view. Well, the way it is, if you have one party seeking relief, the licensee, you might seek that burden. But I mean, the answer is yes or no, the answer is yes or no. That is, am I right, I'm thinking, understanding your argument, that if that agreement had said you can bring either kind of suit, either we, yes, we, the patentee, will bring a suit, in which case you'll defend it. Or if you bring it first, you can bring a declaratory judgment action, okay, for the same thing. If it had said that, and the agreement had upheld up the royalties until one or the other was decided, then your client, the patentee, would have the burden of proof in either, because it's exactly the same thing. You could have brought – are you following me? No, I'm afraid not. Okay, skip it. So, really, what the Federal Circuit did, said there was no shifting here. First, you've got to look to who's got the burden of proof. You get that from Schaffer, the normal default rule, only one party seeking relief. And then they said, and besides, the patentee could not have brought suit because you can't accuse him of infringement. So you have a simple case, only one party seeking relief, that party has the burden.  And anyway, even without this agreement, because only one party can bring suit. It's just like in Schaffer. This party brings suit, they have the burden. The other party brings suit, they have the burden. So they're actually the same. Roberts. But you're really looking at it, though, from the point of view of a contract action rather than a patent action. Well, it can't be a patent action, because the whole purpose of the license is not to have an infringer. And it is a contract action, and that gets into the jurisdictional question. And to answer Justice Ginsburg's question, yes, there isn't the usual jurisdiction that you would have in a patent infringement action. And this comes from the unanimous opinion of this Court earlier this year in Gun v. Mitten, in which I think Your Honor was the author, which says that that's just a contract action. Just having a patent question doesn't get you into full court. But, Mr. Neustadt, I was under the impression that according to this contract, if Medtronic stops paying royalties, you can bring not only a contract suit, but in fact a patent suit, an infringement suit. Well, that has nothing to do with the contract, because then they breach the contract. But you can bring an infringement suit according to the very agreement that you signed. It's not in accordance with the agreement. If we can't bring an infringement suit, they're not infringing. They are infringing if they break the contract and they stop paying royalties. Oh, sure. And then you can bring an infringement suit. Well, of course. But that's not the situation we face here. That's always been true. I mean, if they want to, if the burden of proof is so burdensome to them, just go ahead and breach, and then we'll sue them and we'll have the burden of proof. You can always say that in declaratory judgment actions. That is not the situation we face. The Declaratory Judgment Act posits a hypothetical situation. It always does. You cannot say that we're going to get a patent suit. I'm worried that you're going to sue me later. You're not suing me now. That's not the situation I face. But I worry that you'll sue me later. But you have to do — how can I sue him later if you're continuing to pay royalties? That was the MedImmune situation. MedImmune said, I've got to pay you royalties. They don't want to continue to pay royalties. That's the point. That's right. That's why they bring the Declaratory Judgment Act, so that the Court can tell them you don't have to pay royalties because this stuff is not covered. Well, that's absolutely right. But in that case, and the Court didn't rule upon it because it got remanded, they would have the burden of proof because they're the only party seeking relief. You can't say, not only do you — But you cite the default rule, and you rely on that totally. But there are other rules on burden of proof. For example, the party who has better access to the information. So it's not as though there is this firm rule with no exceptions. I take it from your answers to Justice Scalia that you are saying in every declaratory judgment action where only one party is seeking relief, that party has the burden of proof. So you're not limiting this to patent cases. Is that right? Oh, that's correct. That's the normal default rule. And there should be no exception. I see my light is red. Thank you, counsel. Mr. Waxman, you have three minutes remaining. I'd be happy to respond to any questions that the Court has. Otherwise, I think we'll submit on the briefs. Thank you, counsel. Counsel, the case is submitted.